304 So.2d 110 (1974)
Paul GOLDSMITH, Petitioner,
v.
BUENA VISTA CONSTRUCTION COMPANY and the Industrial Relations Commission, Respondents.
No. 45013.
Supreme Court of Florida.
November 20, 1974.
Edward H. Hurt, Orlando, for petitioner.
Max F. Morris, of Helliwell, Melrose & Dewolf, Orlando, for respondents.
ERVIN, Justice.
This is a review by writ of certiorari of an order of the Industrial Relations Commission affirming an order of the Judge of Industrial Claims.
The Petitioner, Paul Goldsmith, while employed by Respondent Buena Vista Construction Company, sustained a laceration of the cornea of his left eye while cutting a rope with a knife. Enucleation of the left eye was performed on March 7, 1973 and a prosthesis was fitted. Because the sight of his left eye was lost, Petitioner was advised by his treating physician to take every precaution to protect the remaining eye from injury. The doctor advised the use of safety glasses to be worn most of the time. A claim was asserted in the amount of $94 for payment for the protective eyeglasses. The Respondent refused to pay for the expense of the protective eyeglasses.
The Judge of Industrial Claims found that the Respondent was not responsible for the cost of the protective eyeglasses advised or prescribed by the treating physician.
In her order rejecting the claim of $94 for the protective eyeglasses, the Judge found that the parties in the matter had stipulated, inter alia:
"... It was further stipulated that the glasses had been prescribed solely as a preventative measure to avoid the risk of injury as to the remaining eye and *111 that the lenses prescribed were not corrective and were not prescribed in order to prevent a deterioration of the remaining eye."
The Judge concluded her order rejecting the claim in these words:
"The sole issue presented to the Court was whether the employer was responsible for the payment of a bill in the amount of $94. for safety glasses. On the basis of the stipulated facts related above I find:
"That the employer is not responsible for the payment of the bill for the safety glasses as a matter of law under Florida Statute 44.13(1)." [Sic. § 440.13(1), F.S.]
In its order of affirmance the Industrial Relations Commission said:
"The Order on appeal is based on competent, substantial evidence, U.S. Casualty Co. v. Maryland Casualty Co., 55 So.2d 741 (Fla. 1951) and comports with the essential requirements of law. It is affirmed."
While the Commission treats the question before it to be a factual issue solely and resolved it against claimant on the basis of competent, substantial evidence, citing U.S. Casualty Co. v. Maryland Casualty Co. (Fla. 1951), 55 So.2d 741, we conclude as did the Judge of Industrial Claims, that the question is one of law as applied to stipulated facts.
It is our conclusion Section 440.13(1), F.S. was misapplied in the orders below. The portion of Section 440.13(1) applicable to the issue here reads as follows:
"... the employer shall furnish to the employee such remedial treatment, care and attendance under the direction and supervision of a qualified physician or surgeon, or other recognized practitioner, nurse or hospital, and for such period, as the nature of the injury or the process of recovery may require, including medicines, crutches, artificial members and other apparatus. .. ." (Emphasis added.)
The treating ophthalmologist without contradictory opinion evidence gave his expert opinion that claimant's other eye giving him his only remaining vision should be protected at all times and it was advisable that safety protective glasses be worn by claimant most of the time.
It is our conclusion that a realistic meaningful reading of the quoted portion of Section 440.13(1), as distinguished from a technical, narrow reading, supports Petitioner's claim.
The loss of claimant's left eye due to his injury in the industrial accident created for him a lasting permanent condition that requires from the time of the loss the continued protection of his right eye. This protection, according to the treating ophthalmologist, was necessary in order that claimant would have a large degree of assurance of unimpaired vision in his remaining eye. It stands to reason that without the sight of his right eye claimant as a blind man would be so handicapped as to be a total loss for most employments.
The pertinent language of Section 440.13(1) fits the permanent impairment condition of claimant. The nature of the injury created a lasting condition requiring, in the opinion of an expert, permanent protection or care of the right eye because of the possibility of hazard that might cause its loss. The safety glasses represent an apparatus affording relevant care or protection of the impaired claimant which expert opinion indicated was essential.
Claimant's injury condition did not require the protection afforded by the safety glasses for the "process of recovery," but the glasses were necessary for the purpose of affording claimant the protective "care" which his injury condition reasonably necessitated.
A recent case decided by the Industrial Relations Commission, Allegheny Asphalt and Paving Company and Elac Insurance *112 Company, Ltd. v. James E. Seay, Jr., Decision No. 2-2242, February 27, 1973, appears analogous in rationale to the instant cause. We cite it and the situation there as supportive of our views in this review.
In the Allegheny Asphalt case, supra, the Industrial Relations Commission found that where claimant sustained an ischemic infarct of the right temporal lobe of the brain from industrial causes, with paralysis on the left side of his body and, later, from causes unrelated to the accident, had to undergo amputation of both lower legs, the nursing care required was the financial responsibility of the employer and carrier. The Commission stated:
"The Commission does not hold today that the employer/carrier is responsible for any of the medical costs which might have been incurred as a result of the amputation of the claimant's legs. However, what the Commission does hold is that, as it relates to nursing care, the employer/carrier is responsible, in that but for the serious injury which left the claimant permanently and totally disabled as a result of his industrial accident of July 28, 1955, the claimant in this cause would have been able to use the artificial limbs which he sought."
The Industrial Relations Commission went on to cite from Larson on Workmen's Compensation, Volume 1, Section 13, indicating that every natural consequence flowing from an injury is also attributable to an injury unless it is the result of an independent intervening cause relating to the claimant's own intentional conduct.
Likewise, the Commission noted, as it has many times in the past, that:
"Every doubt is to be resolved in favor of coverage." (Citing cases.)
It is our conclusion that the remedial treatment and care for claimant's impaired vision condition created by his industrial injury did not stop at the point of the medical treatment required for the loss of his left eye but that the resulting condition in which claimant was left after his injury also requires attention, protection, and care within the intendment of Section 440.13(1), F.S., to the extent the expert testimony indicated was essential.
As a matter of law, we conclude the orders below constitute error and we quash the same with direction that claimant's claim for $94 for the safety glasses be granted.
It is so ordered.
ADKINS, C.J., and BOYD and McCAIN, JJ., concur.
ROBERTS, DEKLE and OVERTON, JJ., dissent.